Staples, J.
I am of opinion this decree must be affirmed. The evidence, to my mind, is wholly insuffi *442 cient to establish the liability of the appellee for the claim asserted in the bill. It is true that some of the witnesses give it as their impression, that the money was loaned not to Clark and Aisquith individually, but to the appellees. is, nevertheless, a mere impression, and however honestly entertained, it it not supported by the facts disclosed in this record. It is no doubt correct, that the loan was fully understood at the time to be for the use of the appellee, and that the proceeds were accordingly so applied; but that is perfectly consistent with the idea that Clark and Aisquith borrowed the money in their own name, and on their own responsibility, agreeing to look to the revenues of the company for their indemnity. All the facts and circumstances tend to sustain this view. At that time the company was utterly insolvent, and wholly unable to meet its engagements or to raise a dollar on its own credit. The fair inference is, that the holders of the fund did not desire to be embarrassed by any understanding or contract with a corporation in whose ability to pay they had no confidence; but preferred the obligation of two solvent «and responsible individuals, upon whom a demand might be made when the fund should be needed. If the money was loaned to the company, and Clark and Aisquith were merely sureties, why was no bond ever executed by the company, why is it that the board of directors never sanctioned or recognized the transaction. Mr. Hunter was a member of the board; he was present, at a meeting in November 1858, and also in January 1859. He must have been apprised of the resolution of 1840, declaring iuvalid any note or contract of any kind exceeding fifty dollars, made by any officer of the company, unless such note or contract was sanctioned by the board of directors. And, yet, on neither of the occasions referred to, nor at either of the other numerous meetings of the board in 1859 and 1860, was there the slightest allusion to the transaction, or any recognition -of it as a loan to the company. Neither the clerk nor *443 •the treasurer, nor any of the directors, ever heard it mentioned otherwise than as an arrangement by which Clark and Aisquith became the borrowers of the fund, and solely responsible to Messrs. Hunter & Cooke for its repayment.
The company was reorganized in 1866. Since that time the board of directors have been diligently attempting to ascertain the indebtedness of the company arising out of transactions prior to the war, and although Messrs. Hunter and Cooke have been, during this pei’iod, members of the board, this claim has not been alluded to by either of them as imposing a liability on the company, nor has such pretension been asserted by any other person, until the ascertained insolvency of the parties executing the bond. Against this array of facts and circumstances an entry is produced made in 1860, in the day-book of the company, by a clerk who does not profess to be familiar with the original transaction. In this entry mention is made of “ company’s note” to Cooke & Hunter. The clerk states that these words were taken from certain vouchers produced before him showing amount of revenues retained by Aisquith to indemnify him against the liability he had incurred, and because he supposed the money so retained was eventually paid to Messrs. Cooke & Hunter. He did not mean to convey the idea that the company had incurred any responsibility to these gentlemen ; or that its records and books disclosed any facts from which such responsibility could be inferred. On the contrary, the impression made upon his mind was, that Clark and Aisquith had borrowed the” money in their individual capacities, for the use of the company, and let the company have the proceeds, to be retained from the Charlestown depot.” I am satisfied that this is the true history of the transaction, that the loan was made to Clark and Aisquith and the credit given to them exclusively. If this be so no proposition can be clearer than that the company is not responsible for *444 the debt. This exemption is based upon the familiar principle Ü>at where exclusive credit is given to an agent any transaction for a knowui principle, the creditor must abide by his election, and he will not afterw’ards be permitted to shift the responsibility upon the principal.
la Thomson v. Davenport, 9 Barn. & Cress. 78, Lord Teuterden laid down the rule asiollow's: “If at the time of sale the seller, knows not only that the person who is nominally dealing with him is not principal, but agent, ’and also knows who the principal really is, and, notwithstanding all that knowledge, chooses to make the agent his debtor, dealing with him and him alone, then according to the cases of Addison v. Gandasequi and Paterson v. Gandasequi, the seller cannot afterwards, on the failure of the agent, turn round and charge the principal, having once made his election at the time when he had the power of choosing between the one and the other.” Mr. Justice Story uses the following language on the same subject: “If the agent and principal are both known, and exclusive credit is given to the latter, the principal will not be liable, though the agent should subsequently fail; for it is competent to the parties to agree to charge the one, exonerating the other; and an election when once made, becomes conclusive and irrevocable.” Story on Agency, § 447.
It is said, however, that a court of equity, looking to the fact that the company received all the benefit of the loan, and was the party beneficially interested, will upon principles ex equo et bono hold it liable, even though at law llie form of the contract may impose upon it no valid obligation. This view would be entitled to much consideration, if it appeared that the company had not accounted to any one for the amount of the loan. But the difficulty is that the company, in accordance with its agreement with Clark and Aisquith, permitted the latter to retain in his own hands its funds to an amount sufficient to meet the debt to Hunter and Cooke. This ar *445 rangement was made by tbe company, under the impression that the credit was exclusively given to its agents, and without a suspicion it had incurred any liability to Messrs. Cooke and Hunter, and not until the clearly ascertained insolvency of these agents was any intimation given that tbe arrangement had been misunderstood. Under such circumstances the appellants are conclusively bound by the election of those having charge of the fund to rely upon the credit of the parties to the original obligation. It is true that ordinarily, when an agent without authority makes a contract, and the principal receives the benefit of it and retains the money or property acquired by it, the principal will be held to liave ratified the contract, and will be responsible upon it. But where the creditor, knowing of the existence of the principal, contracts with tbe agent, takes his personal obligation, and suffers the principal to settle with his agent-for the amount of the debt without disclosing his demand against tbe principal, he cannot afterwards charge the latter so as to make him a loser; but will be deemed to have elected the agent for his debtor. Story on Agency, § 449; and cases cited in note; Wyatt v. Marquis of Hertford, 3 Easts. R. 147.
For these reasons I am of opinion the decree should be affirmed.
The other judges concurred in the opinion of Staples, J.
Decree aeeirmed.